**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-12-0000135**
**03-JUN-2015**
**08:10 AM**

NO. CAAP-12-0000135

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

DUBIN FINANCIAL LLC, Appellant, v. MORTGAGE BROKERS AND
SOLICITORS PROGRAM, OFFICE OF ADMINISTRATIVE HEARINGS, DEPARTMENT
OF COMMERCE AND CONSUMER AFFAIRS, STATE OF HAWAI'I, Appellee

and

GARY V. DUBIN, Appellant, v. MORTGAGE BROKERS AND SOLICITORS
PROGRAM, OFFICE OF ADMINISTRATIVE HEARINGS, DEPARTMENT OF
COMMERCE AND CONSUMER AFFAIRS, STATE OF HAWAI'I, Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 11-1-1415 RAN (MBS-2010-31-L & MBS-2009-14-L))

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Ginoza, JJ.)

Appellants Dubin Financial, LLC, (Dubin Financial) and
Gary V. Dubin (Dubin) (collectively, Appellants) appeal from the
Order Affirming the Director's Final Order and Final Judgment
entered by the Circuit Court of the First Circuit (Circuit
Court)[1] on February 13, 2012. This appeal arises out of a
recommended order by the Hearings Officer of the Department of
Commerce and Consumer Affairs (DCCA), and entry of such order by
the Director of DCCA, revoking Appellants' Mortgage Solicitor
License and Mortgage Broker License and imposing a fine based on
material misstatements on Dubin's license applications.

---

[1] The Honorable Rhonda A. Nishimura presided.

On appeal, Appellants argue that the Circuit Court erred when it affirmed the order of the DCCA because (1) the DCCA cannot revoke a withdrawn license pursuant to Chapter 454 of the Hawaii Revised Statutes (HRS); (2) violation of HRS § 436B-19 does not permit imposition of a monetary fine; (3) the DCCA lacked standing to bring a consumer complaint pursuant to HRS § 92-17; (4) the DCCA erroneously relied upon unpublished decisions; and (5) there is not substantial evidence in the record to support the conclusion that Dubin's alleged misrepresentations were intentional or material.

Based on a careful review of the issues raised and the arguments made by the parties, the applicable authority, and the record, we resolve Appellants' points on appeal as follows and affirm.

1.   The expiration of Appellants' licenses was not a bar to disciplinary action.  Appellants argue that the DCCA erred when it revoked their respective licenses because a previously withdrawn license cannot be revoked.  By a "withdrawn" license, Appellants apparently mean "forfeiture, nonrenewal, surrender, or voluntary relinquishment" thereof.  The DCCA has jurisdiction over a license regardless of withdrawal or forfeiture and has the authority to revoke "withdrawn" licenses.  HRS § 436B-22 (2013)[2]

---

[2]      Chapter 436B contains the Uniform Professional and Vocational Licensing Act.  HRS § 436B-22 provides that

> The forfeiture, nonrenewal, surrender, or voluntary relinquishment of a license by a licensee shall not bar jurisdiction by the licensing authority to proceed with any investigation, action, or proceeding to revoke, suspend, condition, or limit the licensee's license or fine the licensee.

"'Licensing authority' or 'authority' means the director," and the "'Director' means the director of commerce and consumer affairs."  HRS § 436B-2 (2013). Chapter 436B "shall only be applicable to the professions and vocations required by law to be regulated by the licensing authority."  HRS § 436B-3(a) (2013).  Chapter 454 (1993) required licensing of mortgage brokers and mortgage solicitors by the director of commerce and consumer affairs.  See HRS § 454-3 (1993 and Supp. 2009), "Licensing, requirements, application." and § 454-1 (1993), "Definitions." (defining the "commissioner" as the director of commerce and consumer affairs.)

and § 454-5(a) (1993).[3]

2.    The DCCA has authority to fine a licensee.   HRS §§ 436B-22, 436B-18 (2013)[4].

3.    The DCCA has standing to investigate a licensee upon its own motion.   HRS § 92-17 provides that, "upon receipt of an investigation report generated by the board on its own motion," the DCCA may sanction a licensee.

4.    The Hearings Officer did not err when he considered unpublished opinions.   Appellants do not indicate

---

[3]    The Petitions in this case were filed on November 9, 2010. Chapter 454 was repealed and replaced by Chapter 454F, effective January 1, 2011.   Act 84, §§ 29 and 38, 2010 Haw. Sess. Laws 156, 158.   However, the repeal of Chapter 454 "does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun before [January 1, 2011].   Act 84, § 35 Id., at 158.

HRS § 454-5(a) provided that "[i]f the commissioner [DCCA Director, HRS § 454-1] has reason to believe that a licensee or any person has violated this chapter, or rules adopted pursuant thereto, or that any license issued under the chapter may be subject to suspension or revocation," the DCCA could investigate and take legal action.   HRS § 454-5(a) (emphasis added).

[4]    HRS § 436B-18 provides that

> In addition to the licensing sanctions or remedies provided by section 92-17 against any licensee, the licensing authority may also impose conditions or limitations upon a licensee's license after a hearing conducted in accordance with chapter 91.   The violation of any condition or limitation on a licensee's license may be cause to impose additional sanctions against the licensee.   Unless otherwise provided by law, any fine imposed by the licensing authority after a hearing in accordance with chapter 91 shall be no less than $100 for each violation, and each day's violation may be deemed a separate violation.

(Emphasis added.)

HRS § 92-17 (2012) provides that

> (b) Upon receipt of a written complaint or upon receipt of an investigation report generated by the board on its own motion or upon staff investigation which establishes an alleged violation of any provision of law or rule, the board or its authorized representative shall notify the licensee or person regulated of the charge against the licensee or person and conduct a hearing in conformity with chapter 91 if the matter cannot be settled informally.   If the board finds that the charge constitutes a violation, the board may order one or more of the following remedies as appropriate relief: . . . (5) Imposition of a fine[.]

(Emphasis added.)

where in the record on appeal such an allegedly improper reliance occurred. Appellants thus failed to meet their burden of demonstrating "error by reference to matters in the record." State v. Hoang, 93 Hawai'i 333, 334, 3 P.3d 499, 500 (2000)). "[W]e will not presume error from a silent record." Id. at 336, 3 P.3d at 502. Moreover, Appellants present no supporting authority for their assertion that a Hearings Officer may not rely on prior agency decisions.

Regardless, we can find no clear prohibition, and the Hawai'i Supreme Court has noted administrative decisions in the past. See Kim v. Contractors License Bd., 88 Hawai'i 264, 268, 965 P.2d 806, 810 (1998) (referencing a real estate broker's disciplinary hearing) and Gov't Emp. Ins. Co. v. Dang, 89 Hawai'i 8, 15, 967 P.2d 1066, 1073 (1998) (applying an earlier agency decision to that case).

5. There was substantial evidence to support the Hearing Officer's determination that violations occurred. Appellants argue that "the record and hearing transcript contain insufficient evidence to establish the requisite intent and/or materiality of the alleged violations." Appellants apparently do not dispute that misrepresentations regarding Dubin's prior conviction occurred, but rather whether such misrepresentations were immaterial.

> Pursuant to HRS § 91-14(g)(5), administrative findings of fact are reviewed under the clearly erroneous standard, which requires [the appellate] court to sustain its findings "unless the court is left with a firm and definite conviction that a mistake has been made." Bumanglag v. Oahu Sugar Co., Ltd., 78 Hawai'i 275, 279, 892 P.2d 468, 472 (1995) (block format and citation omitted). Administrative conclusions of law, however, are reviewed under the de novo standard inasmuch as they are "not binding on an appellate court." Id. (block format and citation omitted). "Where both mixed questions of fact and law are presented, deference will be given to the agency's expertise and experience in the particular field and the court should not substitute its own judgment for that of the agency." Dole Hawaii Div.-Castle & Cooke, Inc. v. Ramil, 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990). "To be granted deference, however, the agency's decision must be consistent with the legislative purpose." Camara v. Agsalud, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984).

4

Peroutka v. Cronin, 117 Hawai'i 323, 326, 179 P.3d 1050, 1053 (2008).

The Hearings Officer made the following Findings of Fact:

> 23. Question No. 6 on Respondent Dubin Financial's mortgage broker's application and Question No. 8 on Respondent Dubin's mortgage solicitor's [] application require information that the commissioner has determined to be necessary in order to further the appropriate licensing of mortgage brokers and mortgage solicitors pursuant to Chapter 454.
>
> 24. A "Yes" answer to those questions would not necessarily result in a denial of a license. However, it would provide information that could lead the commissioner to request further information and/or make further inquiries regarding the reported criminal convictions in order to determine if the convictions had a bearing on the fitness of the applicant for a license. A "No" answer to those questions, on the other hand, would not lead the commissioner to request further information and/or make further inquiries regarding the unreported criminal convictions, and such an answer thus precludes the commissioner from determining whether the criminal convictions have a bearing on the fitness of the applicant for a license.
>
> 25. A misrepresentation of the absence of criminal convictions would be likely to induce the commissioner to approve a license application whereas a correct statement about the existence of criminal convictions could detrimentally affect the applicant's license application.

These unchallenged findings by the Hearings Officer indicate that the type of misrepresentations in question were material to the DCCA's application procedure. Appellants did not challenge these findings, and therefore they are binding on appeal. Pila'a 400, LLC v. Bd. of Land & Natural Res., 132 Hawai'i 247, 268, 320 P.3d 912, 933 (2014).

To the extent the Hearings Officer's findings represent mixed questions of law and fact, given the deference we must give such agency determinations, Peroutka, id., he was not wrong.

In Hawai'i, an incorrect answer on a license application "is material if it would be likely to induce a reasonable person to manifest his assent, or the maker knows that it would be likely to induce the recipient to do so." Kim, 88 Hawai'i at 271, 965 P.2d at 813 (citing Restatement of Contracts § 162(2)). Furthermore,

5

> [t]he materiality of a misrepresentation is determined from the viewpoint of the maker, while the justification of reliance is determined from the viewpoint of the recipient. The requirement of materiality may be met in either of two ways. First, a misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent. Second, it is material if the maker knows that for some special reason it is likely to induce the particular recipient to manifest his assent. There may be personal considerations that the recipient regards as important even though they would not be expected to affect others in his situation, and if the maker is aware of this the misrepresentation may be material even though it would not be expected to induce a reasonable person to make the proposed contract.

Id., 88 Hawai'i at 271-72, 965 P.2d at 813-14 (quoting Restatement of Contracts § 162, cmt. c). In Kim, the Supreme Court of Hawai'i held that contractors made material misrepresentations on their license applications when they negligently and carelessly provided false information in response to questions regarding previous debts and bankruptcy because HRS Chapter 444, the relevant licensing chapter, implicitly required applicants to have a sound financial history. Id., 88 Hawai'i at 272-73, 965 P.2d at 814-15.

Similarly, in the instant case HRS Chapter 454 was concerned with the financial integrity of applicants and licensees. For example, the DCCA "require[d] information with regard to the applicant as the commissioner [DCCA] may deem desirable, with due regard to the paramount interests of the public, as to the experience, financial integrity, and competency of the applicant as to the financial transactions involving primary or subordinate mortgage financing." HRS § 454-3(d). Further, mortgage brokers were required to post $15,000 bond to assure compliance with licensing statutes. HRS § 454-3(c). Finally, "[f]ailure to maintain a record or history of competency, trustworthiness, fair dealing, and financial integrity" were grounds for revocation or denial of all licensees or applicants. HRS § 436B-19(8) (2013).

Taken together, financial integrity is a factor in determining whether to award a license and where license application questions are relevant to a statutorily-mandated

inquiry, those questions are necessarily material.  See Kim, 88 Hawai'i at 272, 965 P.2d at 814 (holding that application questions addressing the financial integrity and solvency of the applicant, by asking about past debts and bankruptcy, were material).  The Appellants' "NO" answers were material because failing to disclose three convictions for failing to file federal tax returns could have induced the Program not to request further information or make further inquiries regarding the unreported criminal convictions, thus interfering with the Program's ability to determine whether Appellants had "maintain[ed] a record or history of competency, trustworthiness, fair dealing and financial integrity."  In short, the misrepresentations undermined the Program's applicant evaluation process and therefore warranted revocations and imposition of fines by the DCCA.

Based on the foregoing, the February 13, 2012 Order Affirming the Director's Final Order and Final Judgment entered by the Circuit Court of the First Circuit are affirmed.

DATED:  Honolulu, Hawai'i, June 3, 2015.

On the briefs:

Frederick J. Arensmeyer and
John D. Waihee, III,
for Appellants.

Presiding Judge

John T. Hassler,
Regulated Industries
Complaints Office, Department
of Commerce and Consumer
Affairs,
for Appellees.

Associate Judge

Associate Judge

7